# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

SYED AHMED,

    Plaintiff,

  v.

SUNOCO, INC. (R & M),

   Serve:

    Registered Agent
    Corporation Service Company
    100 Shockoe Slip, Floor 2
    Richmond, Virginia 23219

SUNOCO, LLC,

   Serve:

    Registered Agent
    Corporation Service Company
    100 Shockoe Slip, Floor 2
    Richmond, Virginia 23219

And

MASCOT PETROLEUM COMPANY, INC.,

   Serve:

    Registered Agent
    CT Corporation System
    4701 Cox Road, Suite 301
    Glen Allen, Virginia 23060

    Defendants.

Civil Action No. 1:20-cv-1512

**COMPLAINT**: Americans with Disabilities Act – Discrimination; Age Discrimination in Employment Act - Discrimination

**Jury Trial Demanded**

## COMPLAINT

Comes now the Plaintiff, SYED AHMED (hereinafter "Plaintiff" or "Mr. Ahmed"), and files this Complaint against Defendants, SUNOCO, INC. (R & M); SUNOCO, LLC; and MASCOT PETROLEUM COMPANY (hereinafter "Defendants" or "Sunoco"), and moves this Court for entry of judgement in his favor against the Defendant, as set forth herein:

## NATURE OF THE ACTION

1. Plaintiff brings this action for damages and injunctive relief pursuant to the Defendant's violations of the Age Discrimination in Employment Act 29 U.S.C. §§ 621, *et seq.*, and American's With Disabilities Act 42 U.S.C. §§ 12011 *et seq.,* to redress Defendant's deliberate and willfull unlawful employment discrimination against Plaintiff in violation of his federal rights.

2. This action against Defendant Sunoco arises from Defendant's unlawful discrimination against, denial of reasonable acccommodation, and termination of Mr. Ahmed on account of his age and disability.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, the Eastern District of Virginia has proper subject matter jurisdiction over this matter as it is a question of federal law.

4. Specifically, this matter concerns the violation of the Age Discrimination in Employment Act 29 U.S.C. §§ 621, *et seq.* and the American's With Disabilities Act 42 U.S.C. §§ 12011 *et seq.*

5. The Eastern District of Virginia is the proper venue for this action pursuant to 28 U.S.C. § 1391(c)(2).

6. The Alexandria Division of the Eastern District of Virginia is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1)(2) as the location at which the discriminatory practices were perpetrated, where the Plaintiff was employed by Defendant was at 7320 Gambrill Road, Springfield, Virginia 22153, and is convenient to the parties and witnesses.

## PARTIES TO THIS ACTION

7. Plaintiff, Syed Ahmed, is an American citizen in the United States and a resident of Springfield, Virginia.

8. At all times relevant to the allegations in this Complaint, Mr. Ahmed was an employee of Defendant.

9. At all times relevant to the allegations in this Complaint, Mr. Ahmed was employed at the Defendant's location at 7320 Gambrill Road, Springfield, Virginia 22153.

10. Defendant, Sunoco, LLC, is a limited liability company existing under and by virtue of the laws of the Commonwealth of Virginia, organized in Pennsylvania, with its principal place of business in Pennsylvania.

11. Defendant, Sunoco, Inc. (R & M) is a corporation existing under and by virtue of the laws of the Commonwealth of Virginia, organized in Pennsylvania, with its principal place of business in Pennsylvania.

12. Defendant, Mascot Petroleum Company, Inc., is a wholly owned division of Sunoco, Inc. that operates the 7320 Gambrill Road Sunoco gas station incorporated in Pennsylvania with a principal place of business in Pennsylvania.

13. Defendants maintain and operate a place of business at 7320 Gambrill Road, Springfield, Virginia 22153 and has thereby availed themselves of the laws and privileges of operation in the Commonwealth of Virginia.

14. Defendant employs over five hundred (500) employees and is an employer as defined by the Age Discrimination in Employment Act ("ADEA"); 29 U.S.C. § 630(b) and American's with Disabilities Act ("ADA") 42 U.S.C. §§ 12011 *et seq.*

## PROCEDURAL REQUIREMENTS

15. On May 19, 2015, Mr. Ahmed filed a charge of age discrimination in violation of the ADEA and ADA with the Equal Employment Opportunity Commission ("EEOC"). Such charge was filed within one hundred eighty (180) days after the unlawful employment practices in violation of 29 U.S.C. §§ 621, *et seq.*, and 42 U.S.C. §§ 12011 *et seq.* occurred.

16. Complainant received a Notice of Dismissal and Right to Sue letter from the EEOC on September 11, 2020. (*See* **Exhibit A** – Notice of Dismissal and Right to Sue issued by the EEOC).

17. Complainant filed this Complaint within ninety (90) days of receipt of the Notice of Dismissal and Right to Sue.

18. Mr. Ahmed has complied with the ADEA and ADA administrative requirements prior to filing suit and, having met his procedural and administrative deadlines, has elected to bring the action privately and thus has exhausted all available administrative remedies prior to bringing this suit.

## FACTUAL ALLEGATIONS

19. Mr. Ahmed was employed at Defendant from October 10, 2011  to May 19, 2015.

20.     Mr. Ahmed worked diligently for Sunoco throughout his tenure.

21.     At the times relevant to this complaint Mr. Ahmed was fifty seven (57) years old and at least ten years older than the next oldest employee.

22.     Sunoco employed approximately six other clerk/cashiers at the location where Mr. Ahmed worked, none were over fifty.

23.     Mr. Ahmed's supervisor, and the manager of the Sunoco location at which the discriminatory actions took place, was Mr. Akhter.

24.     Other cashier/clerks working for the Defendant under Mr. Akhter at the same store and position as Mr. Ahmed included the following individuals, with their believed ages: Loveleen (age 23), Shakil (age 35), Shonkor Talpatra (age 40), Sarker Kalasan (age 40), Mark (35), and Muhan (age 30) and Shipra Saha (38).

25.     At the times relevant to this complaint Mr. Ahmed was a qualified disabled individual.

26.     Mr. Ahmed was told by Mr. Akhter in November 2014 that Mr. Ahmed would be promoted to shift leader.

27.     Mr. Ahmed has Chronic Kidney Disease Stage III, Gout, hernias, anemea and arthritis in his hands.

28.     These medical issues hamper Mr. Ahmed's ability to lift items over ten pounds or above his head, lowers his immune response—making him highly susceptible to infections--, increases his chances of falls, and causes him pain and numbness when in the cold for too long.

29.     Under his previous manager, Mr. Sumon Chowdhury ("Mr. Chowdhury"), Mr. Ahmed had requested and been granted reasonable accommodations so that he could perform the functions of his position.

30.  Mr. Ahmed would work the checkout counter during his shifts, take out trash before it was full, and perform other tasks that did not endanger his health.

31.  Mr. Ahmed was also not required to stay in the freezer for long periods of time, which tended to excacerbate his conditions.

32.  Mr. Ahmed, was given permission to come in late after doctor's appoinments by his previous supervisor to complete his shifts.

33.  Mr. Chowdhury, Mr. Ahmed's manager, allowed Mr. Ahmed to alter his schedule to work on the days Mr. Ahmed did not need to go to the doctor.

34.  Mr. Ahmed's manager was replaced in 2014 by Mr. Shahid Akhter ("Mr. Akhter").

35.  Sunoco, through its manager Mr. Akhter, discriminated against Mr. Ahmed beginning in January 2015 by denying his requests for reasonable accommodation.

36.  Defendant and Mr. Akhter were aware of Mr. Ahmed's conditions and his need for accommodations. (*See* **Exhibit B** – Affidavit of Syed Abbas).

37.  Despite having previously been granted his reasonable accomodations under prior management, Mr. Ahmed provided doctor's notes to Sunoco, through Mr. Akhter, detailing the issues with which Mr. Ahmed was dealing.

38.  Mr. Akhter, despite these doctor's notes and requests from Mr. Ahmed, denied his requests, forcing him to work the dumpsters, take out full trash, lift inventory well over ten pounds, and other actions contrary to Mr. Ahmed's previously granted reasonable accomodations.

39.  Sunoco deliberately and willfully refused Mr. Ahmed's reasonable accommodations and made his working condition worse.

40. On night shifts to which Mr. Ahmed was assigned, Mr. Akhter, on behalf of Sunoco, would remove the second scheduled employee, leaving Mr. Ahmed alone on the night shifts.

41. Night shifts usually required two cashier/clerks.

42. Due to the deliberate short staffing, Mr. Ahmed was forced to do tasks that his previous manager had not required him to do on account of his disability, such as long trips to the freezer and lifting heavy objects.

43. The reduction in cashier/clerks on Mr. Ahmed's shifts by Sunoco directly impacted his health and wellbeing.

44. Mr. Akhter would also not permit Mr. Ahmed to work shifts after doctors' appointments, as the previous manager allowed pursuant to Mr. Ahmed's requests.

45. Mr. Ahmed's requests were reasonable.

46. Mr. Ahmed had been granted his reasonable accommodation requests by his previous manager.

47. Sunoco, in furtherance of his discrimination against Mr. Ahmed on account of his disability and need for accommodation, also reduced his hours.

48. Mr. Akhter would take Mr. Ahmed off of the schedule for the days following Mr. Ahmed's doctor's appointments, even though Mr. Ahmed had notified Defendant of his appointments beforehand.

49. Mr. Akhter, at least four times from January to May 2015, eliminated Mr. Ahmed's shifts even on days that he was not going to the doctor if Mr. Ahmed went to the doctor at all that week.

50. At least once, in March 2015, Mr. Akhter assigned hours that Mr. Ahmed had worked to a younger and non-disabled employee.

51. Mr. Ahmed, in that circumstance, had earned those hours.

52. Mr. Akhter gave the hours, and the income associated with those hours to a different employee.

53. Mr. Akhter was trying to force out Mr. Ahmed and have him replaced with younger, healthier, employees, even though Mr. Ahmed was performing the essential functions of his job.

54. Mr. Akhter continuously discriminated against Mr. Ahmed on account of his age and disability, denying Mr. Ahmed promotion opportunities, denying his requests for reasonable accommodation, and ultimately, through Sunoco, terminating him.

55. While under this previously granted reasonable accommodation, Mr. Ahmed performed so well at his essential functions that his previous manager indicated that he may be promoted when a position opened up.

56. Mr. Akhter himself reiterated that Mr. Ahmed would be promoted to shift leader when a position opened, in November 2014.

57. Between November 2014 and March 2015 Mr. Ahmed asked Mr. Akhter every two weeks when he would be promoted, to which Mr. Akhter replied "soon."

58. However, Mr. Akhter, in March 2015, promoted Loveleen Kaur to shift leader instead of Mr. Ahmed.

59. Loveleen is in her mid twenties.

60. Loveleen had been working at Sunoco for only a few months.

61. During those few months Mr. Ahmed had trained Loveleen and served as her mentor.

62.     Loveleen was promoted by Mr. Akhter and Sunoco to the position promised to Mr. Ahmed by Defendant, prior management and Mr. Akhter himself.

63.     Despite being overlooked for a promotion he deserved, due to his age and disability, Mr. Ahmed often took the nightime shift, an unpopular working time for the other employees to better his position with Defendant and demonstrate his deservedness of a promotion.

64.     Mr. Akhter, determined to discriminate against Mr. Ahmed, attempted to have Mr. Ahmed's hours reduced, despite Mr. Ahmed's attempts to be a model employee .

65.     Sunoco, instead of promoting Mr. Ahmed, reduced his hours from full to part time.

66.     Mr. Ahmed, because of this reduction, became ineligible for medical benefits, 401(k) matching, and other benefits of full time employment.

67.     Even after Mr. Ahmed's hours were cut and Loveleen was promoted over him, Mr. Akhter continually offered Mr. Ahmed a promotion.

68.     Mr. Akhter and Sunoco had no intention of giving Mr. Ahmed a promotion.

69.     Mr. Akhter informed Mr. Syed Abbas ("Mr. Abbas"), who was a coworker of Mr. Ahmed in 2015, that he wanted to get rid of Mr. Ahmed because he was "elderly and required medical needs." (*See* **Exhibit B** – Affidavit of Syed Abbas).

70.     Mr. Akhter also told Mr. Basil Safdar ("Mr. Safdar") that "Mr. Ahmed's medical condition is unacceptable" and that "Mr. Ahmed is old" as reasons for terminating Mr. Ahmed. (*See* **Exhibit C** – Affidavit of Basil Safdar).

71.     Mr. Akhter additionally refused to promote Mr. Ahmed to the position of shift leader for the night shifts, a job that he offered to younger employees.

72.     Mr. Akhter even specifically offered the position to Mr. Abbas, so that Mr. Ahmed would not receive the position. during his shifts.

73. On account of Mr. Ahmed's disability, despite his ability to perform the functions of his job sufficiently well to earn a promotion, Sunoco reduced Mr. Ahmed's hours to part time.

74. Sunoco did not reduce Mr. Ahmed's hours to part time due to performance or business reasons, but as a form of discrimination on account of his disability.

75. Mr. Akhter stated Sunoco's discriminatory goals against Mr. Ahmed, including his hour reduction, to Mr. Abbas and Mr. Safdar, calling Mr. Ahmed too old and sick.

76. As part of a discriminatory scheme to eliminate Mr. Ahmed, Mr. Akhter—on behalf of the Defendants—offered Mr. Abbas a position as a shift leader if he would agree to take Mr. Ahmed's shifts so that Mr. Ahmed could be eliminated.

77. Defendant, and Mr. Akhter, offered promotions to employees who would assist in ridding Defendant of Mr. Ahmed, who was, as Mr. Akhter described, "[the] elderly [with] medical needs."

78. Mr. Abbas and Mr. Safdar refused participation in this discriminatory scheme to harm Mr. Ahmed, which would eventually lead to the Defendants' creation of the A-plus scheme to have Mr. Ahmed terminated.

79. Mr. Akhter said to other clerk/cashiers: "He's [Mr. Ahmed] old and sick, if you take over his shift at night we'll make you shift leader."

80. Mr. Akhter and Sunoco were unable to convince Mr. Ahmed's coworkers to force him out.

81. Defendants had denied Mr. Ahmed promotions previously offered, refused reasonable accommodation requests previously provided, and attempted to have younger employees

displace Mr. Ahmed with promises of promotion as part of a discriminatory scheme to remove their oldest employee.

82. Defendants, in a continuation of the discriminatory scheme to get rid of Mr. Ahmed because of his age and medical conditions, concocted a plan, with the mangers at Sunoco local branches, to create grounds to terminate Mr. Ahmed.

83. In May 2015, Mr. Akhter accused Mr. Ahmed of violating Sunoco policy regarding customer A-Plus reward cards and wrongful scanning of those cards.

84. Prior to this accusation, Mr. Ahmed had informed Mr. Akhter that he would have to be absent for a doctor's appointment on later that month, May 2015.

85. Mr. Ahmed denied any wrongdoing and left voicemails with Sunoco human resources stating that Mr. Akhter was wrongfully accusing him.

86. The operating system which scanned the A-Plus cards had recently been installed, and since installation had been malfunctioning.

87. In fact, Mr. Ahmed and other employees had previously warned Mr. Akhter that the scanner at the check-out was malfunctioning and that it would commonly scan unintentional items (including A-Plus cards) by the register.

88. The younger employees working for Defendants' had similar issues with the scanning machine.

89. Video evidence from the store showed definitvely that Mr. Ahmed had not violated Sunoco policy as Mr. Akhter had attempted to claim and that the problem derived from a malfunction in the scanning machine—as Mr. Ahmed and other employees had warned Mr. Akhter.

90. A week later Mr. Akhter again raised the issue of the A-Plus cards with Mr. Ahmed.

91.     Mr. Ahmed again denied wrongdoing and reminded Mr. Akhter of the video evidence exonerating him.

92.     Mr. Akhter, realizing that the facts did not support his contestation typed a statement admitting to scanning the A-plus cards (though not in violation of company policy) for Mr. Ahmed to sign.

93.     Mr. Akhter forced Mr. Ahmed to sign a statement saying he had accidently scanned the A-plus cards.

94.     Mr. Ahmed requested that he have time to read the document because his English was and is shaky at best.

95.     Mr. Ahmed expressed concern over signing a document without knowing its contents, Mr. Akhter replied "you did nothing wrong, just sign it."

96.     Mr. Akhter insisted that Mr. Ahmed sign the statement immediately without review or even time for Mr. Ahmed to comprehend it.

97.     Mr. Ahmed, per Mr. Akhter's admission, video evidence, and testimony of other employees had not acted improperly with regards to the A-Plus cards, which had been scanned accidentally. (*See* **Exhibit D** – VEC Fact finding that Mr. Ahmed did not act improperly nor was he terminated for misconduct).

98.     Mr. Akhter, the next day, told Mr. Ahmed that he was terminating him.

99.     Sunoco, through Mr. Akhter, terminated Mr. Ahmed a day before he was scheduled for a doctor's appointment.

100.    Several other older employees from other branches of Defendants' operations were discharged in a similar manner as part of a systematic attempt to rid themselves of older employees.

101. Mr. Ahmed had never had a negative performance review, even after the change in manager.

102. Mr. Ahmed was well liked by his fellow employees as well as customers of Defendant, who told him that they missed his presence at the store after his termination.

103. Mr. Ahmed was a diligent worker who met all of the standards of performance at his position, sufficient to be promoted to shift leader. (*See* **Exhibit B**).

104. Mr. Ahmed was not terminated for misconduct. (*See* **Exhibit D**).

105. Mr. Akhter acted on behalf of Sunoco through all of his actions as the store manager.

106. Mr. Akhter, in the weeks prior to Mr. Ahmed's termination had told two employees Mr. Abbas and Mr. Safdar that he wanted to get rid of Mr. Ahmed because he was old and disabled. (*See* **Exhibits B and C**).

107. Mr. Akhter regularly tried to have Mr. Ahmed replaced by younger employees, in promotions, in Mr. Ahmed's shifts, and ultimately – in Mr. Ahmed's job.

108. Mr. Akhter denied Mr. Ahmed promotions that were promised to him and gave them to younger employees.

109. Younger employees had similar A-Plus card reading issues that derived from glitches in the machine that Mr. Ahmed had been accused of.[1]

110. Mr. Akhter did not attempt to terminate or accuse the younger store cashiers and workers of violations to have them terminated.

111. Mr. Akhter and Defendants terminated Mr. Abbas and Mr. Safdar for refusing to participate in Defendants' scheme to eliminate Mr. Ahmed.

112. None of the younger employees under Mr. Akhter were terminated.

---

[1] Of note, Mr. Ahmed did not even have his own A-plus card, thus he could receive no benefit from improperly scanning his card – this scheme by Defendants to rid themselves of Mr. Ahmed is pretextually flawed at its core.

113. Sunoco and Mr. Akhter, ultimately terminated Mr. Ahmed on May 19, 2015.

114. Mr. Ahmed contacted Sunoco Human Resources multiple times between May 10, 2015—when the A-Plus allegation was made by Mr. Akhter—and his termination.

115. Sunoco Human Resources did not respond to Mr. Ahmed's inquiries because Sunoco had concocted the scheme with Mr. Akhter to have Mr. Ahmed terminated.

116. Mr. Akhter met with Sunoco management the day before Mr. Ahmed was terminated and brought the letter he had forced Mr. Ahmed to sign with him.

117. Mr. Akhter, with the approval of Sunoco, fulfilled his scheme to terminate  Mr. Ahmed.

118. Sunoco terminated Mr. Ahmed on account of his age and disability.

119. Mr. Ahmed contacted Sunoco Human resources by phone again after his termination, expressing his concern that his termination was on account of his age and disability, Sunoco human resources conducted no follow up.

120. Mr. Ahmed, pro se, filed a charge of discrimination with the EEOC and Fairfax Division of Human Rights within a month of his termination in May 2015.

121. Sunoco, have dragged their feet through the charging process with the Fairfax Division of Human Rights and Mr. Ahmed has been left attempting to find resolution for his discrimination for over five years.

122. Mr. Ahmed, despite continued attempts to find replaceable work, has not been able to acquire similarly paying work to his previous position at Sunoco.

123. Mr. Ahmed has lost his job at Sunoco, after already having lost his opportunity for advancement when he was denied promotion on account of his age.

124. Mr. Ahmed suffered and continues to suffer from the lack of a comparable position on account of the discrimination of Sunoco and its agents.

## COUNT I: DENIAL OF REASONABLE ACCOMMODATIONS

125. Mr. Ahmed reasserts and affirms the statements made in paragraphs 1-124.

126. Plaintiff was a qualified disabled individual for all times relevant to this complaint, from—at latest—November 2014 onward.

127. Plaintiff suffered from Chronic Kidney Disease Stage III, Gout, hernias, anemea and arthritis in his hands.

128. These issues effected Mr. Ahmed's ability to lift objects, made him more susceptible to infection and disease, and decreased his ability to remain in cold places for long periods of time.

129. Plaintiff's significant life functions were substantially affected by his medical issues.

130. Defendant was aware that Plaintiff was a qualified disabled individual. (*See* **Exhibit B**).

131. Plaintiff provided to Defendant, through his supervisors Mr. Chowdhury and Mr. Akhter, medical records detailing his disabilities and his needs relating to those disabilities.

132. Plaintiff orally informed his supervisor, Mr. Chowdhury, about his medical issues and his need for reasonable accommodations, he also provided Mr. Chowdury doctors' notes to that effect.

133. Mr. Chowdhury told Plaintiff that he would work with him on these breaks.

134. Mr. Chowdhury allowed Plaintiff to take breaks in the day, as requested by his doctor and himself.

135. These breaks constituted multiple forms of reasonable accommodations granted to Plaintiff by Defendant.

136. Sunoco, did not take any active action to prevent the reasonable accommodations, aquiescing and granting them.

137.    Plaintiff submitted numerous doctor's notes detaling his need for accommodation.

138.    Sunoco replaced Mr. Chowdhury with Mr. Akhter in 2014.

139.    Mr. Akhter refused Plaintiff's previously granted requests for reasonable accommodation, despite knowing and understanding his need for them.

140.    Mr. Akhter denied Plaintiff his requests for reasonable accommodation, which had been granted originally by Defendant.

141.    Defendant refused to grant Plaintiff's reasonable accomodations.

142.    By refusing to provide relief Defendant was functionally denying Plaintiff his reasonable accommodations, despite having provided them in the past.

143.    Mr. Akhter and Defendant discriminated against Plaintiff on account of his disability by denying his requests for reasonable accommodation without cause.

## COUNT II: AGE DISCRIMINATION BY FAILING TO PROMOTE

144.    Plaintiff reasserts and affirms the statements made in paragraphs 1-143.

145.    Defendant violated the ADEA by promoting younger, less experienced employees, over Plaintiff.

146.    Plaintiff had been working for Defendant since 2011.

147.    Plaintiff was fifty seven years old at the relevant times to this count and was the oldest cashier/clerk working at the Gambrill Road location for Defendant.

148.    Mr. Akhter indicated to Plaintiff that he would be promoted to the shift leader position in November 2014 when a position opened up.

149.    Plaintiff regularly performed duties of a shift leader, including coming in for the last hour of other employee's shifts to assist in closing.

150.    Plaintiff was the most experienced and qualified cashier/clerk.

151. In December 2014 Loveleen was hired as a cashier/clerk by Defendant.

152. Loveleen was approximately twenty three years old at the times relevant to this Complaint.

153. Plaintiff trained Loveleen and supervised her during her initial months with Defendant.

154. In January 2015, Mr. Akhter, on behalf of Defendant, promoted Loveleen to the position of shift leader.

155. The shift leader position that Loveleen was promoted to was the one offered to Plaintiff by Defendant, through Mr. Akhter in 2014.

156. Mr. Akhter promoted Loveleen over Plaintiff on account of Plaintiff's age.

157. Plaintiff was more experienced than Loveleen, worked on shifts that Loveleen did not work and for which there was no shift leader, was more qualified to be shift leader than Loveleen, and was offered the position prior to Loveleen's hiring.

158. Sunoco management, specifically Mr. Akhter, stated to other employees that he wanted to get rid of Plaintiff on account of his age.

159. Mr. Akhter had offered other younger employees, including Mr. Syed Abbas ("Mr. Abbas") and Mr. Basil Safdar ("Mr. Safdar") the position of shift leader if they would remove Plaintiff from the schedule, both refused.

160. Mr. Akhter refused to follow through on the promotion offered to Plaintiff on account of Plaintiff's age.

161. Mr. Akhter promoted younger employees for no reason other than the fact that they were younger, despite the younger employees having less experience and having been trained initially by Plaintiff.

162. Plaintiff never received the promotion offered to him by Mr. Akhter and was further discriminated against by Defendant on account of his age.

## COUNT III: DISABILITY DISCRIMINATION BY FAILING TO PROMOTE

163. Plaintiff reasserts and affirms the statements made in paragraphs 1 – 163.

164. Defendant violated the ADA by promoting, less experienced employees, over Plaintiff on account of Plaintiff's disability.

165. Plaintiff had been working for Defendant since 2011.

166. Plaintiff was a qualified disabled individual who could perform the essential functions of his position at the times relevant to this Complaint.

167. Plaintiff has been diagnosed with aenemia as well as arthritis in his hands.

168. Plaintiff is highly susceptible to infection, cannot lift heavy objects, and is greatly harmed by cold conditions as a result of his medical conditions.

169. Plaintiff's position of cashier/clerk required him to operate the register, oversee the store, and perform basic cleaning and maintenance tasks.

170. Plaintiff had no issues performing those tasks.

171. Defendant was aware of Plaintiff's disabilities, having specifically granted him reasonable accomodations for those disabilities.

172. Plaintiff had provided doctors' notes to the Defendant detailing his disabilities and had previously received reasonable accommodations from Defendant on account of his disabilities.

173. Mr. Akhter offered Plaintiff the shift leader position in November 2014, despite his disabilities, which were manifest at the time the promotion was offered and known to the Defendant and Mr. Akhter at the time the promotion was offered.

174. Plaintiff was offered training and paperwork in order to assume the promotion position offered between November 2014 and March 2015.

175. Whenever Plaintiff followed up with Mr. Akhter regarding the offered training and promotion his requests were dismissed and said to be coming "later."

176. In December 2014 Loveleen was hired as a cashier/clerk by Defendant.

177. Loveleen was approximately twenty three years old at the times relevant to this Complaint, and did not have any disabilities.

178. Plaintiff trained Loveleen and supervised her during her initial months with Defendant.

179. In March 2015, Mr. Akhter, on behalf of Defendant, promoted Loveleen to the position of shift leader.

180. The Shift Leader position that Loveleen was promoted to was the one offered to Plaintiff by Mr. Akhter in November 2014.

181. Mr. Akhter promoted Loveleen over Plaintiff on account of Plaintiff's disabilities.

182. Plaintiff was more experienced than Loveleen, worked on shifts that Loveleen did not work and for which there was no shift leader, was more qualified to be shift leader than Loveleen, and was offered the position prior to Loveleen's hiring.

183. Mr. Akhter has stated to other employees that he wanted to get rid of Plaintiff on account of his medical conditions and disabilities.

184. Mr. Akhter had offered other younger employees, including Mr. Abbas and Mr. Safdar the position of Shift Leader if they would remove Plaintiff from the schedule, both refused.

185. Mr. Akhter refused to follow through on the promotion offered to Plaintiff on account of Plaintiff's disability.

186. Mr. Akhter promoted non-disabled employees for no reason other than the fact that they were not disabled, despite the employees had less experience and had been trained initially by Plaintiff.

187. The promotion for which Plaintiff was passed over could be performed by a person with Plaintiff's disabilities.

188. Plaintiff never received the promotion offered to him by Mr. Akhter and was further discriminated against by Defendant on account of his disability.

## COUNT IV: DISABILITY DISCRIMINATION BY REDUCTION FROM FULL TO PART TIME

189. Plaintiff reasserts and affirms the statements made in paragraphs 1 – 188.

190. Defendant violated the ADA by reducing Plaintiff's hours on account of Plaintiff's disability.

191. Plaintiff had been working for Defendant since 2011.

192. Plaintiff was a qualified disabled individual who could perform the essential functions of his position at the times relevant to this Complaint.

193. Plaintiff has been diagnosed with aenemia as well as arthritis in his hands.

194. Plaintiff is highly susceptible to infection, cannot lift heavy objects, and is greatly harmed by cold conditions as a result of his medical conditions.

195. Plaintiff's position of cashier/clerk required him to operate the register, oversee the store, and perform basic cleaning and maintenance tasks.

196. Plaintiff had no issues performing those tasks.

197. Defendant was aware of Plaintiff's disabilities, having specifically granted him reasonable accomodations for those disabilities.

198. Plaintiff had provided doctors' notes to the Defendant detailing his disabilities and had previously received reasonable accommodations from Defendant on account of his disabilities.

199. Plaintiff was offered training and paperwork in order to assume the promotion position offered between November 2014 and March 2015.

200. Instead, Sunoco, in Spring 2015, cut Plaintiff's hours from full to part time.

201. This action caused Plaintiff to lose access to medical benefits, 401(k) matching benefits, and other perks and protections of full time work.

202. Plaintiff, even after his hours were cut, was still asked to perform functions of a shift leader, including helping other employee's close their shifts—a task usually reserved to shift leaders.

203. Sunoco cut Plaintiff's hours on account of Plaintiff's disabilities.

204. Mr. Akhter has stated to other employees that he wanted to get rid of Plaintiff on account of his medical conditions and disabilities.

205. Part of Sunoco's scheme to get rid of Plaintiff through Mr. Akhter involved the switching Plaintiff from full to part time by reducing his hours.

**COUNT V: AGE DISCRIMINATION BY TERMINATION**

206. Mr. Ahmed reasserts and affirms the statements made in paragraphs 1-205.

207. The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to discriminate against an employee on account of age. 29 U.S.C. § 623.

208. Per Title 29 of the United States Code, discrimination includes adverse employment actions such as termination on account of age.

209. Under Title 29 of the United States Code, Defendant discriminated against Mr. Ahmed by terminating him on account of his age.[2]

210. Mr. Ahmed  is a member of a protected class over the age of forty, specifically Mr. Ahmed is fifty seven (57).

211. Mr. Ahmed was at least ten years older than the next oldest cashier at the Sunoco station where he worked and was on average fifteen years older than his fellow employees.

212. Mr. Akhter told other employees, such as Mr. Abbas, that he wanted to get rid of Mr. Ahmed because he was "old and sick." *See* **Exhibit A.**

213. The age difference between Mr. Ahmed and the other employees provides sufficient inference of age discrimination even if some were over forty years old.[3]

214. Mr. Ahmed was performing at or above Defendant's expectations and had never received a negative performance report.

215. Mr. Ahmed had no outstanding personal issues with any of the other employees.

216. Mr. Ahmed suffered an adverse employment action on account of his age.

217. Mr. Ahmed, the oldest employee at the Sunoco location, was terminated on May 19, 2015.

218. Mr. Ahmed was terminated because of his age.

219. The other cashiers were treated more favorably than Mr. Ahmed.

---

[2] The elements necessary to establish a prima facie case for age discrimination are: "[Plaintiff] (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting his employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside the protected class or someone "substantially younger." Sullivan v. Perdue Farms, Inc., 133 F. Supp. 3d 828, 837 (E.D. Va. 2015).

[3] "There can be no greater inference of *age* discrimination (as opposed to "40 or over" discrimination) when a 40–year–old is replaced by a 39–year–old than when a 56–year–old is replaced by a 40–year–old." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996).

220. None of the younger cashiers, except those that opposed Sunoco's attempts to get rid of Mr. Ahmed, were terminated.

221. Younger employees, specifically Loveleen, were given promotions that had been previously promised to Mr. Ahmed.

222. Younger employees were offered promotions if they replaced Mr. Ahmed.

223. Mr. Ahmed's termination was willfull and deliberate.

224. Defendant purposefully and willfully terminated Mr. Ahmed on account of his age.

225. Mr. Ahmed suffered loss of income and benefits as a result of Defendant's discriminatory termination.

226. Mr. Ahmed has and will continue to have in the future a dimunation of wages as a result of Defendant's discriminatory actions.

227. Defendant knowingly and purposefully violated the ADEA by terminating Mr. Ahmed on account of his age.

## COUNT VI: DISABILITY DISCRIMINATION BY TERMINATION

228. Mr. Ahmed reasserts and affirms the statements made in paragraphs 1-227.

229. The American's with Disabilities Act ("ADA") makes it unlawful for an employer to discriminate against an employee on account of age. 42 U.S.C. §12011 *et seq.*

230. Per Title 42 of the United States Code, discrimination includes adverse employment actions such as termination on account of disability.

231. Under Title 42 of the United States Code, Defendant discriminated against Mr. Ahmed by terminating him on account of his disability.

232. Mr. Ahmed is a qualified disabled individual.

233. Mr. Ahmed has been diagnosed with aenemia and arthritis in his hands.

234. Mr. Ahmed cannot lift heavy objects, is highly susceptible to infection and diseases, and cannot be in cold places for extended periods of time.

235. These limitations substantially affect significant aspects of Mr. Ahmed's life.

236. Mr. Ahmed, despite his disability, could perform all of the necessary functions of his position when he was terminated.

237. Mr. Ahmed has had these disabilities since—at the latest—2014 and was able to performed the essential functions of his position and received positive performance reviews.

238. Mr. Ahmed was performing at the same level in 2015 as he was when he began working for Defendant.

239. Mr. Ahmed worked undesirable shifts by himself to assist the Defendant when younger employees refused to work.

240. Defendant was aware of these disabilities when they discriminated against him.

241. Mr. Akhter was Mr. Ahmed's manager and on behalf of Defendant directly discriminated against Mr. Ahmed.

242. Mr. Akhter told other employees that he wanted to get rid of Mr. Ahmed because he was "old and sick." **See Exhibit A**

243. Mr. Ahmed had no outstanding personal issues with any of the other employees.

244. Mr. Ahmed suffered an adverse employment action on account of his disability.

245. Mr. Ahmed was terminated by Mr. Akhter on behalf of Defendant on May 19, 2015.

246. Mr. Ahmed was terminated because of his disability.

247. Store clerks without a disability were not terminated and were treated more favorably than Mr. Ahmed.

248. Another clerk was informed by Mr. Akhter that they had to get rid of Plaintiff because of his medical issues.

249. Mr. Ahmed's termination was willfull and deliberate.

250. Defendant purposefully and willfully terminated Mr. Ahmed on account of his disability.

251. Mr. Ahmed suffered loss of income and benefits as a result of Defendant's discriminatory termination.

252. Mr. Ahmed has and will continue to have in the future a dimunation of wages as a result of Defendant's discrimination.

253. Defendant knowingly and purposefully violated the ADA by terminating Mr. Ahmed on account of his disability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgement against the Defendant as follows:

1. Appropriate declaratory relief declaring the acts and practices of Defendant to have been in violation of Mr. Ahmed's rights as secured by the Age Discrimination in Employment Act 29 U.S.C. §§ 621, *et seq.*, and American's with Disabilities Act 42 U.S.C. §§ 12011 *et seq.;*

2. Permanently enjoin Defendant, its assigns, successor, agents, employees, and those acting in concert with them from engaging in discrimination against employees;

3. For appropriate actual damages against Defendant for violations of the ADEA and ADA in amounts no less than:

   a. $192,500 in Back Payment of Plaintiff's wages from the time of termination to present (calculated to date of filing); and further for backpayment of Plaintiff's from time of filing onward.

    b. $30,000 in Back Payment of scheduled bonuses and raises Plaintiff.

    c. $50,000 in Payment for loss of benefits such as health insurance, dental insurance, vision insurance, and retirement contributions as a result of Plaintiff's wrongful termination.

4. For appropriate liquidated damages against Defendant for COUNT III: Failure to Promote on Account of Age as a willful violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, in amounts equal to damages awarded to Plaintiff for back pay and benefits;

5. For appropriate liquidated damages against Defendant for COUNT V: Termination on Account of Age as a willful violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, in amounts equal to damages awarded to Plaintiff for back pay and benefits;

6. For punitive damages for COUNT I: Failure to Provide Reasonable Accommodation as a willfull violation of the American's with Disabilities Act 42 U.S.C. §§ 12011 *et seq.,* in amount no less than $300,000;

7. For punitive damages for COUNT II: Failure to Promote on Account of Disability as a willfull violation of the American's with Disabilities Act 42 U.S.C. §§ 12011 *et seq.,* in amount no less than $300,000;

8. For punitive damages for COUNT IV: Cutting Hours on Account of Disability as a willfull violation of the American's with Disabilities Act 42 U.S.C. §§ 12011 *et seq.,* in amount no less than $300,000;

9. For punitive damages for COUNT VI: Termination on Account of Disability as a willfull violation of the American's with Disabilities Act 42 U.S.C. §§ 12011 *et seq.,* in amount no less than $300,000;

10. For all other wages and benefits lost or denied;

11. For an award to Plaintiff of his reasonable attorney's fees, and costs incurred in this action, together with expert witness fees and expenses;

12. For an award of any additional amounts necessary to offset the adverse tax consequences of an award received in a lump sum;

13. For an award of pre-judgement and post-judgement interest on any monetary award; and

14. For an Order of any other relief this Court deems to be just and proper.

## **DEMAND FOR JURY TRIAL**

15. Mr. Ahmed, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action for all claims so triable.

Respectfully Submitted,

SYED AHMED

_____/s/_____
Brandon T. Bybee (VSB# 92140)
William B. Barteau (VSB# 93381)
BRANDON T. BYBEE, P.L.C.
P.O. Box 9528
Norfolk, VA 23505
Tel: (757) 568-0090
Fax: (866) 568-0090
brandon@bybeelegal.com
william@bybeelegal.com
*Counsel for Plaintiff*